IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| SHERRI S.[1], <br> **Plaintiff,** | ) <br> ) <br> ) |
| v. | )     **Civil Action No. 7:21cv00327** <br> ) |
| KILOLO KIJAKAZI[2], <br> **Acting Commissioner of Social Security,** | ) <br> ) <br> ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Sherri S. ("Sherri") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. § 1381-1383f, 42 U.S.C. §§ 401–433. Sherri alleges that the Administrative Law Judge ("ALJ") failed to provide a clear hypothetical to the vocational expert resulting in an inconsistent RFC and failed to properly consider the medical opinion of consultative examiner Matthew Wilson, M.D.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **GRANT** the Commissioner's Motion for Summary Judgment (Dkt. 16) and **DENY** Sherri's Motion for Summary Judgment (Dkt. 14).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## **STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Sherri failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

## **CLAIM HISTORY**

Sherri filed for DIB and SSI benefits in January 2019, claiming that her disability began on December 9, 2018, due to degenerative arthritis of lumbar spine/disc disorder, depression, anxiety, and lumbar nerve disorder. R. 12, 62. Sherri's date last insured is June 30, 2020[4]; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 12; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Sherri's claims at the initial and reconsideration levels of administrative review. R. 62–75, 76–90, 93–117. ALJ Michael Dennard held a hearing on December 16, 2020 to consider Sherri's claims for SSI and DIB, where vocational expert Mark Hileman testified, and Sherri was represented by counsel. R. 32–61. On January 12, 2021, the ALJ entered his decision considering Sherri's claim under the familiar five-step process[5] and denying her claim for benefits. R. 12–26.

The ALJ found that Sherri suffered from the severe impairments of lumbar spine degenerative disc disease, obesity, anxiety disorder, and bipolar disorder/depressive disorder.[6] R. 22. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 15–16. Specifically, the ALJ considered listing

---

[4] At the administrative levels of review, Sherri's date last insured was indicated as December 31, 2018. R. 93.

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] The ALJ also noted that Sherri's hypertension was a non-severe impairment. R. 15.

1.04 (disorders of the spine), listing 12.04 (depressive, bipolar, and related disorders), and listing 12.06 (anxiety and obsessive and compulsive disorders). The ALJ also considered Sherri's obesity in relation to the other listings. R. 15. The ALJ found that, regarding her mental impairments, Sherri had moderate limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself, and no limitation in understanding, remembering, or applying information. R. 16–17.

The ALJ concluded that Sherri retained the residual functional capacity ("RFC") to perform a limited range of sedentary work. R 18. Specifically, Sherri can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and be exposed to hazardous machinery, wetness, humidity, extreme cold, and vibration. Sherri can never climb ladders, ropes, or scaffolds, or work at unprotected heights. Id. Sherri is limited to simple, routine tasks with simple, short instructions, for two-hour segments with her time off tasks accommodated by normal work breaks. Id. She can tolerate a low stress work setting, defined as only occasional workplace changes, and cannot perform tasks in which others rely on timely performance of her work. Sherri can only have occasional interaction with supervisors, coworkers, and the public. Id. The ALJ determined that Sherri was unable to perform her past relevant work as a cashier-checker, but that she could perform jobs that exist in significant numbers in the national economy, such as addressing clerk, stuffer, and printed circuit board touchup screener. R. 25. Thus, the ALJ determined that Sherri was not disabled. R. 26. Sherri appealed and the Appeals Council denied her request for review on March 31, 2021. R. 1–3.

## ANALYSIS

Sherri alleges that the ALJ failed to provide a clear hypothetical to the vocational expert

resulting in an inconsistent RFC and failed to properly consider the medical opinion of consultative examiner Dr. Wilson.

### A. Medical History Overview

Sherri has a history of chronic low back pain, as well as anxiety and depression even prior to her alleged onset date in December 2018. Sherri consistently complained of back pain to her providers and was prescribed medication, including injections and referral to pain management, throughout the relevant period. R. 355, 548, 734, 757, 760. A lumbar MRI in October 2019 showed bilateral neural foraminal narrowing a L3-4 and L4-5, disc desiccation throughout, and minimal retrolisthesis throughout. R. 800. In November 2019, Sherri presented to her family doctor complaining of extreme pain and associated weakness in her knees and the doctor noted she had "lumbar disc disease throughout." R. 711. An EMG/nerve conduction study in December 2019 showed no evidence of neuropathy or radiculopathy. R. 685.

Sherri had an initial behavioral health evaluation in October 2019, complaining primarily of anxiety and was diagnosed with major depressive disorder, recurrent, and generalized anxiety disorder. R. 746–47, 751. Sherri also often complained of anxiety and depression to her primary care providers during appointments, including recent panic attacks in February 2020, and worsening symptoms of panic, anxiety, and self-criticism in March 2020 and was diagnosed with panic disorder with agoraphobia and a mild episode of recurrent major depressive disorder. R. 606, 822–23. Though her primary care doctor diagnosed bipolar disorder in September 2020 and briefly prescribed Lithium (R. 784), Sherri's psychiatrist disagreed and confirmed her diagnoses of major depressive disorder, recurrent, generalized anxiety disorder, and panic disorder, discontinuing the Lithium prescription and reinstating Cymbalta. R. 841–42.

1. <u>Medical Opinion Evidence</u>

In August 2019, Gilbert Todd Vance, Ph.D. performed a psychological consultative evaluation. R. 599–602. On mental status exam, Sherri's appearance, behavior, speech, thought process and thought content were within normal limits. R. 600. Dr. Vance indicated Sherri met the criterial for diagnoses of moderate major depressive disorder, recurrent, and unspecified anxiety disorder, with symptoms of generalized anxiety and panic attacks, as well as agoraphobia. R. 601. Dr. Vance stated that to work, Sherri would need accommodations of simple and repetitive tasks, and "may struggle to interact with the public due to anxiety" as well as handle the "usual stressors." <u>Id.</u> However, she could maintain regular attendance, perform work activities on a consistent basis, and work without special supervision, interact with coworkers, and accept instructions from supervisors. <u>Id.</u> The ALJ found Dr. Vance's opinion generally persuasive, with the exception of his undefined statements that Sherri "may struggle" with interacting with the public and handling the stressors of competitive work. R. 21.

In August 2019, state agency psychologist Joseph Leizer, Ph.D. reviewed the record and found Sherri had moderate limitations in concentration, persistence, and pace, but that she can perform simple tasks for two-hour blocks and complete a normal work day and work week. R. 73. The ALJ found this opinion persuasive. R. 22. On reconsideration, the state agency psychologist determined Sherri's mental impairments nonsevere, which the ALJ found not persuasive. R. 22. Also in August 2019, state agency doctor William Rutherford, Jr. M.D. found that Sherri was capable of a limited range of light work, with only occasional postural movements, and never climbing ladders, ropes, or scaffolds. R. 70–71. The ALJ found this opinion persuasive regarding the postural limitations, but not persuasive regarding the limitations to light work, as the ALJ found the evidence supported an RFC limited to sedentary work. R. 23.

In August 2019, Dr. Wilson performed a physical consultative examination. R. 592–597. On exam, Sherri was able to walk without an assistive device, with a steady slow gait, but had some difficulty rising from a squat and had normal muscle strength, normal sensory examination, good hand-eye coordination, and positive straight leg test at 25 degrees. R. 597. Dr. Wilson determined that Sherri would be able to sit, stand, and walk normally for a full workday with normal breaks, with no assistive device necessary, carry 15 pounds frequently and 25 pounds occasionally, and perform only occasional bending, stooping, crouching, and squatting. Id. Dr. Wilson found "visual limitations due to decreased right visual acuity," but no communication or environmental limitations. Id. The ALJ determined Dr. Wilson's opinion that Sherri could perform occasional postural movements was persuasive but found that Sherri should be limited to sedentary work, instead of light work. R. 23.

### B.  Hypothetical Question to the Vocational Expert

Plaintiff contends that the hypothetical question to the vocational expert, as set out in the hearing transcript, is unclear. However, a review of the whole transcript and the ALJ's decision shows this is the result of an error in transcription. The ALJ crafted an RFC for Sherri as follows:

> [Sherri] is limited to performing simple, routine tasks with simple short instructions for two-hour segments with time off task accommodated by normal work breaks. She can tolerate a low stress work setting, defined as only occasional workplace changes. She cannot perform tasks *in which others rely on [her] timely performance of her work.* She can have occasional interaction with supervisors, coworkers, and the public.

R. 18. Yet, the hearing transcript shows a hypothetical question with different limitations than set out in the RFC:

> [Claimant] is limited to simple, routine tasks with simple short instructions for two hour segments; they're able to tolerate a work setting as low stress [with] only occasional workplace changes; they cannot be expected to perform tasks *in which the others allow the individual timely performance of their work*; they can occasionally interact with

7

      supervisors, coworkers, and the public; and time off-task can be accommodated by normal breaks.

R. 57.

The VE responded to the hypothetical question with the mental limitations set out in the RFC. Specifically, the vocational expert testified that his answers regarding the RFC limitation of "working in terms of others not relying on you" was based on his more than 30 years of experience, as that language is not in the Dictionary of Occupational Titles. R. 59–60. The record shows that the uncertainty created by the hypothetical question in the transcript was actually a transcription error, and that the VE answered the question posed based upon Sherri's RFC. Shore v. Astrue, No. 1:10CV238, 2013 WL 438122, at *5 (M.D.N.C. Feb. 5, 2013), report and recommendation adopted sub nom. Shore v. Colvin, No. 1:10CV238, 2013 WL 1320504 (M.D.N.C. Mar. 29, 2013) (noting that while the transcript appears to contain a typographical error in the hypothetical question, it is still "clear based upon the remainder of the hypothetical question that the ALJ's intent was to inquire about jobs with limited stress that do not involve complicated decisions and work that is somewhat routine"). Consistent with this, the ALJ explained the Sherri "has been precluded from work where others depend on timely performance of [her] tasks" because of her own report that strict deadlines increase her anxiety. R. 22.

Additionally, counsel did not ask for clarification of the hypothetical question or phrasing at the hearing, which would have been expected if the ALJ had ask the hypothetical question as set out in the transcript. See e.g. Wright v. Astrue, No. 1:12-CV-00014, 2013 WL 275993, at *3 (W.D. Va. Jan. 24, 2013) (noting that the hearing transcript indicates that the vocational expert either misstated the DOT numbers, or the "stenographer erroneously transcribed the number" and the claimant's "failure to address this issue at the hearing supports the notion that the stenographer merely mistranscribed the number and that the VE in fact stated the correct number

8

at the hearing"). Even if the ALJ asked the question using the phrase "allow" instead of "rely on," the vocational expert testified that he had, in fact, considered the issue of "working in terms of others not relying on you," aided by his extensive experience in his field, because it is not specifically contemplated by the DOJ. R. 60. Thus, the VE confirmed that he considered and understood Sherri's limitation to "tasks where others do not rely on her timely performance" and provided jobs that Sherri could perform even with this limitation. Accordingly, remand is not necessary on this ground.

### C. Medical Opinion Evidence

Sherri argues that the ALJ failed to properly consider the opinion evidence from Dr. Wilson in crafting the RFC, specifically regarding her visual acuity.[7] Sherri emphasizes that the ALJ did not include limitations in the RFC to accommodate Dr. Wilson's finding that she would have "visual limitations due to decreased right visual acuity." R. 597. Though Sherri acknowledges that Dr. Wilson failed to "specify the extent of [her] vision limitation," she contends that "even a slight visual deficit would likely impact" the performance of two of the three jobs identified, Addresser (DOT 209.587-010), and Touch-up Screener, Printed Circuit Board Assembly (DOT 726.684-110), which both require constant near acuity. The remaining job, Stuffer (731.685-014) requires occasional near acuity, and none of the jobs require far acuity. The Commissioner counters that substantial evidence supports the ALJ's assessment and the ALJ followed the regulations in considering Dr. Wilson's opinion, especially because Sherri

---

[7] Sherry also complains that the ALJ failed to properly consider Dr. Wilson's opinion regarding her manipulative limitations. However, while Sherri complains that the ALJ failed to include the limitation found by Dr. Wilson that she could only frequently reach, handle, feel, grasp, finger, push, and pull, Sherri does not indicate how this limitation would impact her ability to perform any of the jobs, all of which also require only frequent reaching, handling, fingering, pushing, and pulling, and no feeling. See Addresser, DOT 209.587-010, Touch-up Screener, Printed Circuit Board Assembly, DOT 726.684-110, and Stuffer, DOT 731.685-014.

never alleged that she had a vision limitation beyond her need to use prescription glasses, and the record does not support a vision limitation.

Under the regulations, when making an RFC assessment, the ALJ must assess every medical opinion received in evidence.[8] However, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimants' medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical finding are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. Id. "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization, and other factors such as an understanding of the disability program's policies and evidentiary requirements. Id.[9]

Here, the ALJ appropriately considered the supportability and consistency of Dr. Wilson's

---

[8] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims, like this one, filed on or after March 27, 2017. For claims filed before this date, the rules in § 404.1527 apply.

[9] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well–supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

opinion. While Dr. Wilson does write that "there are relevant visual limitations due to decreased right visual acuity" he never states the nature of these limitations, how they would impact Sherri's ability to work, or the basis for his opinion. As pointed out by the Commissioner, Dr. Wilson's statement on visual acuity apparently originated from his note that "visual acuity of left eye was 20/32, right eye was 20/80, claimant presented without corrective lenses." R. 594. However, in her application and function report, Sherri did not allege that vision problems limited her ability to work[10] (R. 244, 293) and the record does not support a such a limitation as Sherri did not complain of vision issues to her providers beyond the need to wear corrective lenses for her nearsightedness. Likewise, Sherri made no mention of vision problems at the hearing before the ALJ, instead focusing on her radiating back pain and mental health issues. The state agency doctors also reviewed the opinion by Dr. Wilson, specifically noting his statement on visual acuity, but found no visual limitations required in their RFC assessments. R. 78, 107.

In this context, the ALJ was not required to specifically discuss Sherri's vision or explain why he did not include limitations related to her vision in her RFC. "There is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citation omitted). To determine whether an ALJ should have considered evidence of an impairment, courts consider whether the claimant indicated the impairment limited his ability to work on his disability application or at his administrative hearing, and whether the claimant consistently and frequently complained about the impairment to his doctors, and, if so, when any such complaints occurred relative to the alleged onset date. See, e.g., Corcoran v. Astrue, Civ. No. SKG-08-913, 2009 WL 3100350, at

---

[10] In fact, in her function report, Sherri did indicate that one of her hobbies was reading, which requires being able to see. R. 297.

11

*19 (D. Md. Sep. 22, 2009); Burton v. Berryhill, No. CV CBD-17-3681, 2018 WL 5312162, at *3 (D. Md. Oct. 26, 2018) citing Meyer v. Colvin, 754 F.3d 251, 257 (4th Cir. 2014) (citation omitted) (noting "an ALJ is not obliged to investigate a claim not presented at the time of the [benefits] application . . . and not offered at the hearing as a basis for disability"). Sherri did not contend raise her vision problems affected her ability to function, either in her application or at the administrative hearing, and thus, the ALJ did not commit any error by not explaining why he did not accommodate any vision impairment in the RFC. Thus, remand is not necessary on this ground, and the ALJ was not required to defer to Dr. Wilson's opinions.

The ALJ adequately explained how the evidence supports his conclusions regarding the RFC, including a discussion of Sherri's medical history, the medical opinions, and her own allegations. Accordingly, I conclude that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For these reasons, an order will be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

Entered:  June 8, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge